IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DAVID RYAN WOOD,<br><br>Plaintiff,<br><br>v.<br><br>WELLPATH, LLC; THE COUNTY OF ROWAN; J. TRAVIS ALLEN in his official capacity; KEVIN AUTEN, in his individual capacity; GREGORY HANNOLD, in his individual and official capacity; OFFICER JERRY EWART, in his individual capacity; JOHN DOE CORPORATION/ PENNSYLVANIA NATIONAL MUTUAL INSURANCE COMPANY; KEVIN JOHN CORRIGAN, in his individual capacity; ASHLEY ROWLAND, in her individual capacity; JACQUELIN MICHELE WILLIAMS, in her individual capacity; and UNKNOWN WELLPATH PROVIDER(S),<br><br>Defendants. | ) | 1:23-cv-811 |

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Plaintiff David Ryan Wood ("Plaintiff") brings four federal claims and three state-law claims against Defendants Wellpath, LLC ("Wellpath"), Rowan County, J. Travis Allen ("Sheriff Allen"), Kevin Auten ("Sheriff Auten"), Gregory Hannold ("Hannold"), Jerry Ewart ("Officer Ewart"), John Doe Corporation/Pennsylvania National Mutual Insurance Company

("Pennsylvania National"), Kevin John Corrigan ("Doctor Corrigan"), Ashley Rowland ("Nurse Rowland"), Jacqueline Michele Williams ("Williams"), and Unknown Wellpath Providers(s). (Doc. 2.) Currently before this court are three motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed by three sets of defendants: Defendants Sheriff Auten, Gregory Hannold, and Officer Ewart, in their individual capacities, and Pennsylvania National, (Doc. 29); Defendants Rowan County, and Sheriff Allen and Hannold in their official capacities, (Doc. 31); and Defendants Doctor Corrigan, Nurse Rowland, and Wellpath, (Doc. 33). For the reasons stated herein, Defendants Sheriff Auten, Hannold, Officer Ewart, and Pennsylvania National's motion to dismiss will be granted. Defendants Rowan County, Sheriff Allen, and Hannold's motion to dismiss will be granted in part and denied in part. And Defendants Doctor Corrigan, Nurse Rowland, and Wellpath's motion to dismiss will be granted in part and denied in part.

## I. FACTUAL BACKGROUND

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (citing King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)). The facts, taken in the light most favorable to Plaintiff, are as follows.

Defendants Rowan County and Wellpath entered a contract whereby Wellpath would provide medical services in the Rowan County Detention Center beginning in June 2021. (Doc. 2 at ¶ 51.) Plaintiff was arrested for a probation violation in July 2021 and was thereafter incarcerated at the Rowan County Detention Center. (Id. ¶ 65.)

According to the complaint, shortly after Plaintiff arrived at the Detention Center he complained to jail staff that he had a "severe and persistent headache." (Id. ¶ 70.) Plaintiff alleges that between July and September 2021 he submitted numerous requests for medical treatment for his "persistent headache." (Id. ¶¶ 72–86.) In response to Plaintiff's complaints, Wellpath providers evaluated Plaintiff multiple times throughout August and September 2021 and prescribed him pain medication. (Id. ¶¶ 73–99.) Plaintiff was eventually placed on suicide watch in late September 2021 because he displayed a "bizarre decline in daily functioning" and "stated something that sounded like 'I just wanna die.'" (Id. ¶¶ 94, 96.) After being discharged from suicide watch, Doctor Corrigan evaluated Plaintiff for his complaints of "dizziness, headache, feeling light headed, and ringing in his ears" and ordered that Plaintiff be transported to the emergency room. (Id. ¶ 99.)

At the hospital, scans of Plaintiff's brain revealed "significant hydrocephalus and a cerebellar lesion" and "increased intercranial pressure." (Id. ¶ 100.) Plaintiff was ultimately diagnosed with "cryptococcal meningitis, communicating hydrocephalus, and[ ] cerebellar edema," and he remained in the hospital for 29 days and underwent several surgical procedures. (Id. ¶¶ 101, 102-08.) As a result, the complaint alleges that Plaintiff "was permanently and severely damaged . . . with respect to his cognitive functioning, memory, and hearing." (Id. ¶ 109.)

In addition to the facts alleged, Plaintiff has incorporated information from news articles about Wellpath in the allegations, including a full article from CNN in 2019 attached to the complaint as an exhibit. (See Doc. 2-1.) This court has no doubt the articles ran as alleged. However, how the information within those articles should be considered in analyzing the complaint and corresponding 12(b)(6) motions is not straightforward. In other words, "taking judicial notice of the article does not entail accepting the truth of its content." Layani v. Ouazana, No. ELH-20-420, 2021 WL 805405, at *23 (D. Md. March 3, 2021).

Relatedly, "if a plaintiff attaches or references a report prepared by a third-party to show how he learned of certain

facts alleged in his complaint, he does not automatically adopt all of the factual conclusions contained in the report." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 167 (4th Cir. 2016) (citing Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1134 (D.C. Cir. 2015) ("Banneker referred to some of the report's recitations to show how it learned some facts in the complaint, but it did not purport to and was not required to adopt the factual contents of the report wholesale.")). It is not clear here what purpose is served by Plaintiff's apparent adoption of the articles, nor which of the factual contents of the articles are adopted and relevant to the complaint.

Plaintiff and counsel bear the obligation to allege facts that have evidentiary support or are likely to have evidentiary support. See Fed. R. Civ. P. 11(b). To the extent a news article is used to establish necessary plausible facts, this court is not persuaded, generally, that news articles may serve that purpose. Another district court has stated:

> The article may not be so used because it does not give rise to the causes of action alleged in the complaint, nor is it central or integral to those causes of action. Instead, it merely reports information of questionable reliability. As such, the Times article does not fit within the Venture Associates/American Chiropractic line of cases and should not be used to fill factual holes in the complaint's allegations. Put differently, the Venture Associates/American Chiropractic line of cases does not extend to allow parties to fill gaps in their factual allegations by reference to unnamed or anonymous sources in a newspaper article. To conclude otherwise would allow

> parties to circumvent Rule 11's duty to conduct "an inquiry reasonable under the circumstances," Fed. R. Civ. P. 11, and would serve to reduce that duty to the mere purchase of a newspaper. If Rule 11's requirement of a reasonable investigation is to be given its proper effect, courts must view with caution, and some skepticism, parties' claims to incorporate newspaper articles to fill gaps in a complaint's allegations. Of course, there may be circumstances when a newspaper article contains reliable information that may be used consistent with Rule 11's reasonable inquiry requirement. For example, an article reporting uncontroversial facts such as the public occurrence of an event, or the closing price of a corporation's stock, or weather conditions may provide enough information to satisfy a reasonable inquiry under Rule 11. The Times article in this case does not fall within this category, especially given that it relies largely on anonymous sources and contains contradictory information. Reliance on anonymous sources is particularly troublesome under Rule 11 because unless the source is later identified, there is no way to verify the reliability of the information. In other words, if an anonymous source remains anonymous, there appears to be no way to conduct a reasonable inquiry into the source's reliability.

Walker v. S.W.I.F.T. SCRL, 517 F. Supp. 2d 801, 806–07 (E.D. Va. 2007) (citations omitted). In this case, the news articles appear to be directed at disclosing alleged conduct by Wellpath and make no reference to prior issues within Rowan County specifically. Similarly, the articles contain a host of allegations or suggestions of misconduct but do not offer facts as to whether those allegations and any related lawsuits resulted in the allegations being substantiated, successfully pursued, or any other fact to indicate the reliability of the allegations. This court "view[s] with cautions, and some

skepticism, parties' claims to incorporate newspaper articles to fill gaps in a complaint's allegations." Id. at 807.

The court finds the articles do not add plausible facts to the claims asserted against Sheriff Allen, Sheriff Auten, Hannold, and Officer Ewart in the individual capacity claims. However, with respect to the Rowan County Defendants, Plaintiff alleges that Hannold:

> expressly acknowledged that Wellpath had been sued numerous times, but brushed this off, saying: 'Lawsuits are kind of common in this business . . . I have known their representatives since I took over the jail and I've discussed those lawsuits with her and some of her bosses before. I don't have any reservations about their ability to protect our county against lawsuits.'

(Doc. 2 ¶ 56.) At this stage of the proceedings, the court finds Hannold's comments, when considered in light of the articles, is sufficient to plausibly allege notice to the Sheriff and the County of a risk that Wellpath would not provide adequate medical care, as further explained hereinafter. Similarly, as more fully addressed hereinafter, the court finds the articles sufficient to provide notice to Wellpath. The accuracy of the information, and whether the articles did in fact provide notice, are matters which will be addressed later in these proceedings.

Additional facts will be addressed herein as necessary.

## II. **PROCEDURAL HISTORY**

Plaintiff filed this complaint in September 2023. (Doc. 2.) Defendants filed three motions to dismiss and supporting memoranda, (Docs. 29, 30, 31, 32, 33, 34), Plaintiff responded in opposition to all three motions, (Docs. 43, 44, 45), and Defendants replied in support, (Docs. 49, 50, 51).

Plaintiff brings seven claims against Defendants. Count I alleges failure to provide adequate medical care in violation of 42 U.S.C. § 1983 against all Defendants in their individual capacities. (Doc. 2 ¶¶ 113-18.) Count II alleges failure to provide adequate medical care in violation of 42 U.S.C. § 1983 against Defendants Wellpath, Rowan County, Sheriff Auten, and Sheriff Allen and Hannold in their official capacities. (Id. ¶¶ 119–29.) Count III alleges failure to intervene in violation of 42 U.S.C. § 1983 against all defendants. (Id. ¶¶ 130–33.) Count IV alleges failure to train and supervise in violation of 42 U.S.C. § 1983 against Defendants Wellpath, Rowan County, Sheriff Allen and Hannold in their official capacities, and Sheriff Auten in his individual capacity. (Id. ¶¶ 134–39.) Count V alleges negligence against all Defendants. (Id. ¶¶ 140–46.) Count VI alleges injury to a prisoner in violation of N.C. Gen. Stat. § 162-55 against Defendants Hannold in his individual and

official capacity and Sheriff Auten in his individual capacity. (Id. ¶¶ 147–52.) Count VII alleges an action on a surety bond, pursuant to N.C. Gen. Stat. § 58-76-1, et seq. against Sheriff Auten, Sheriff Allen, Hannold, and John Doe Corporation/ Pennsylvania National. (Id. ¶¶ 153–56.) Plaintiff also seeks punitive damages. (Id. ¶¶ 157–60.)

The first motion to dismiss for failure to state a claim was filed by Defendants Sheriff Auten, Hannold, and Officer Ewart in their individual capacities, and Pennsylvania National ("Individual Capacity Defendants"). (See Doc. 29.) Sheriff Auten, Hannold, and Officer Ewart seek to dismiss the individual capacity claims against them for: failure to provide adequate medical care in Counts I and II; failure to intervene in Count III; and negligence in Count V. (Doc. 30 at 2–3.)[1] Hannold and Sheriff Auten also seek to dismiss the individual capacity claims against them for injury to a prisoner in Count VI and the action on the surety bond in Count VII. (Id. at 3.) Sheriff Auten further seeks to dismiss the individual capacity claims against him for failure to train and supervise in Count IV.

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

(Id.) And Pennsylvania National seeks to dismiss the action on the surety bond in Count VII. (Id.)

The second motion to dismiss for failure to state a claim was filed by defendants Rowan County, and Sheriff Allen and Hannold in their official capacities ("Rowan County Defendants"). (See Doc. 31.) Rowan County, Sheriff Allen, and Hannold seek to dismiss the official capacity claims against them for: failure to provide adequate medical care in Count II; failure to intervene in Count III; failure to train and supervise in County IV; and negligence in County V. (Doc. 32 at 3.) Hannold further seeks to dismiss the official capacity claim against him for injury to a prisoner in Count VI. (Id.) And Sheriff Allen and Hannold seek to dismiss the action on the surety bond in Count VII. (Id.)

The third and final motion to dismiss for failure to state a claim was filed by Defendants Doctor Corrigan, Nurse Rowland, and Wellpath ("Provider Defendants"). (See Doc. 33.) All three Provider Defendants seek to dismiss the failure to intervene claim in Count III. (Doc. 34 at 1.) Doctor Corrigan and Nurse Rowland seek to dismiss claim against them for failure to provide adequate medical care in Count I. (Id.) And Wellpath moves to dismiss the claim for failure to provide adequate

medical care in Count II and for failure to train and supervise in Count IV. (Id. at 1–2.)

## III. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556–57).

When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. See id. This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## IV. ANALYSIS

### A. Individual Capacity Defendants' Motion to Dismiss

Individual Capacity Defendants have moved to dismiss seven counts in the complaint, alleged against Individual Capacity

Defendants in their individual capacities, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Several of the claims Individual Capacity Defendants moved to dismiss name fewer than all Individual Capacity Defendants and some name additional defendants. (See Doc. 2 at 41–51.)

### 1. **Count I: Failure to Provide Adequate Medical Care under § 1983**

Individual Capacity Defendants first seek to dismiss the individual capacity claim against them in Count I for failure to provide adequate medical care. (Doc. 30 at 14.) They argue that Plaintiff makes "no allegations that Hannold, Sheriff Auten, or Officer Ewart had any role in [his] medical treatment" and in fact "does not plead factual matter showing that these defendants had any interactions with Plaintiff at all." (Doc. 30 at 13-14 (emphasis removed).) Plaintiff responds that Officer Ewart was aware of his "serious medical needs" because he "received at least four complaints detailing Plaintiff's extreme pain and inadequate care." (Doc. 43 at 12.) And Plaintiff further argues that Sheriff Auten and Hannold "were made aware of [Plaintiff's] escalating symptoms during his two-month decline." (Id. at 14.)

Section 1983 liability is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh,

275 F.3d 391, 402 (4th Cir. 2001). To that end, a Section 1983 claim requires allegations about each defendant's personal involvement. See Wilcox v. Brown, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)).

The Fourth Circuit has repeatedly recognized "a pretrial detainee's Fourteenth Amendment right to receive adequate medical care and to be free from deliberate indifference to their known medical needs."[2] Rhoads v. Riddell, 180 F.4th 171, 180 (4th Cir. 2026) (citing Tarashuk v. Givens, 53 F.4th 154,

---

[2] Throughout his complaint, Plaintiff alleges violations of the "Eighth and/or Fourteenth Amendment." (E.g., Doc. 2 ¶ 117.) Prior to the Fourth Circuit's Decision in Short v. Hartman, the same standard was applied to deliberate indifference claims under both the Eighth and Fourteenth Amendments. 87 F.4th, 593, 607-08 (4th Cir. 2023). Individual Capacity Defendants argue that "[i]t is not clear that the new test articulated in Short is now the Fourth Circuit test" but maintain that Plaintiff's claims fail under either test. (Doc. 30 at 15.) Plaintiff argues in response that he was "a pretrial detainee whose claims are subject to the Fourteenth Amendment" test articulated in Short, (Doc. 43 at 10-11), and Individual Capacity Defendants appear to concede that the Fourteenth Amendment standard applies, (see Doc. 49 at 2-3). Regardless, the Fourth Circuit made clear in its subsequent decision in Rhoads that "Short . . . introduced a different method of establishing the knowledge element of a deliberate indifference claim." 180 F.4th at 182.

164 (4th Cir. 2022); Scinto v. Stansberry, 841 F.3d 219, 236 (4th Cir. 2016)). To state a claim for deliberate indifference to a medical need, a pretrial detainee must plead that:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

Short, 87 F.4th at 611.

A plaintiff does not have "to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." Id. Instead, it is sufficient for a plaintiff to show that "the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)). But "it is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." Id. at 611-12 (citing Kingsley v. Hendrickson, 576 U.S. 389, 396 (2015)).

Here, Plaintiff has adequately pled that he suffered from an objectively serious medical condition — "cryptococcal

meningitis, communicating hydrocephalus, and[ ] cerebellar edema." Doc. 2 ¶ 101; see Short, 87 F.4th at 612 ("A condition is objectively serious if it is diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.") (internal quotation marks omitted). But, for reasons that follow, Plaintiff's claims in Count I fail on the remaining elements of deliberate indifference.[3]

First, Plaintiff's claims as to Sheriff Auten and Hannold fail at Short's second and third elements because he has not pled any facts demonstrating that Sheriff Auten or Hannold knew or should have known of Plaintiff's medical condition and thereafter failed to respond appropriately to his condition. Plaintiff alleges that Hannold was involved in the decision to contract with Wellpath to provide medical care at the Rowan County Detention Center, (e.g., Doc. 2 ¶ 56), and that Sheriff Auten was "the Sheriff of Rowan County at all times relevant to this action," (id. ¶ 13). But Plaintiff never alleges that Sheriff Auten or Hannold encountered Plaintiff during his

[3] Individual Capacity Defendants state that Plaintiff alleged a claim for failure to provide adequate medical care against them in their individual capacities in Counts I and II. (Doc. 30 at 2.) But the substance of Plaintiff's allegations makes only a claim against Wellpath, Sheriff Allen, and Hannold in their official capacities in Count II. (Doc. 2 ¶ 124.)

incarceration or that any Detention or medical staff communicated Plaintiff's medical complaints to them. Nor does Plaintiff provide anything more than conclusory allegations that the nature of their roles at the Detention Center would give them reason to know of an individual inmate's medical condition. (See Doc. 2 ¶¶ 13, 16.)

Plaintiff cites several portions of his complaint response to Individual Capacity Defendants' motion that he argues support his claim Sheriff Auten and Hannold knew of his condition. (Doc. 43 at 14.) Several of these allegations demonstrate that Wellpath staff were aware of Plaintiff's condition. (E.g., Doc. 2 ¶¶ 91, 92, 94.) But he has provided no basis for his claims that Sheriff Auten and Hannold would have been aware of Plaintiff's condition specifically. (See Doc. 43 at 14; Doc. 2 ¶¶ 88, 95–98.) Plaintiff therefore fails to state facts sufficient to plausibly alleged that Sheriff Auten and Hannold knew or had reason to know of Plaintiff's serious medical condition and failed to act appropriately in response.

Second, Plaintiff's claims as to Officer Ewart fail at Short's second element because he has not plausibly alleged that Officer Ewart failed to act appropriately in response to Plaintiff's serious medical condition. Plaintiff alleges that Officer Ewart received four of his grievance forms, filed on

August 1, 5, and 14, 2021, reporting his symptoms and requesting medical attention. (Doc. 2 ¶¶ 74, 76, 77.) In these grievances, Plaintiff stated he had not yet been seen by a nurse for his headache, (id. ¶ 74), that he experienced "constant pain," (id. ¶¶ 76, 77), and complained that he was "seriously hurting" and was being lied to about seeing a provider, (id. ¶ 81). Officer Ewart thus knew that Plaintiff had a condition requiring medical care, plausibly satisfying Short's third element. (Id. ¶¶ 74, 76, 77, 81.)

But Plaintiff's claims fail at Short's second element because by his own factual allegations, Office Ewart's responded to each grievance by forwarding Plaintiff's complaints to a nurse. (Id.) And while there was a nine-day delay in forwarding Plaintiff's final complaint to nurse, the facts alleged in Plaintiff's complaint also demonstrate that Plaintiff maintained access to the grievance system and received medication adjustments and responses to other medical complaints during that period. (See Doc. 2 ¶¶ 80–83, 93.) As such, Plaintiff's factual allegations demonstrate that Officer Ewart response to Plaintiff's medical condition was not "objectively unreasonable," Short, 87 F.4th at 611 (quoting Kingsley, 576 U.S. at 397), and did not "ignore pleas for medical care" Greene v. Cnty. of Durham Off. of Sheriff Dep't, No. 14-CV-153, 2014 WL

5465371, at *4 (M.D.N.C. Oct. 28, 2014) (citing Estelle v. Gamble, 429 U.S. 97, 104–05 (1976); Cooper v. Dyke, 814 F.2d 941, 945–46 (4th Cir. 1987)).

Plaintiff's allegations also state that during the period in which Officer Ewart received Plaintiff's grievances, Plaintiff was seen by a medical provider and prescribed pain medication. (Doc. 2 at ¶¶ 75–76, 80.) The Fourth Circuit has recognized that when "a prisoner is under the care of medical experts . . . , a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands." Iko v. Shreve, 535 F.3d 225, 242 (4th Cir. 2008) (quoting Spruill v. Gillis, 372 F.3d 218, 236 (3rd Cir. 2004)); see also Koon v. North Carolina, 50 F.4th 398, 407 (4th Cir. 2022) ("[G]ood-faith efforts to remedy the plaintiff's problems will prevent finding deliberate indifference, absent extraordinary circumstances."). And while it is true that officials' "ability to rely on the decisions of the medical personnel [i]s not without limit," Plaintiff's complaints that the dosage of medication he was prescribed was not adequate to treat his headache, (see, e.g., Doc. 2 ¶ 76), were insufficient to allege that Officer Ewart was "on notice that additional care was required." Rhoads, 180 F.4th at 182–83. Contrast id. at 183 (stating that "[a]ppellee had an obvious 'grapefruit sized' lump

on the side of her head," and that there was "no indication in the record that Appellee was seen by any medical personnel"), with Doc. 2 ¶ 75-76 (Plaintiff stating that he "waited all night for this nurse" and that "[s]he came" but that "325 naproxen ISNT [sic] sufficient" and that his dosage "was 'changed from 375mg to 500mg'"). For these reasons, Individual Capacity Defendants' motion to dismiss the claims against them in Counts I and II will be granted.

### 2. **Count III: Failure to Intervene under § 1983**

Individual Capacity Defendants next seek to dismiss the individual capacity claim against them in Count III for failure to intervene. (Doc. 30 at 17.) Defendants argue that Plaintiff "has not pled or alleged any facts showing that any moving defendants can plausibly be liable under a 'bystander liability' theory." (Doc. 30 at 17.) Plaintiff responds because Officer Ewart received his complaints and Sheriff Auten and Hannold contracted with Wellpath, they "had opportunities to ensure that [Plaintiff] received the care he desperately needed." (Doc. 43 at 17.)

"[A]n omission to act, when coupled with a duty to act, may provide a basis for liability" under 42 U.S.C. § 1983. Randall v. Prince George's Cnty., Md., 302 F.3d 188, 203 (4th Cir. 2002). "Therefore, if a bystanding officer (1) is confronted

with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and treated accordingly." Id.

Having concluded that Plaintiff failed to plausibly allege that Sheriff Auten and Hannold knew or had reason to know of his medical condition, this court likewise concludes that Plaintiff fails to plausibly allege that either Sheriff Auten or Hannold were "confronted with a fellow officer's illegal act" with respect to Plaintiff's medical treatment during the events in question. Id. Plaintiff argues that Individual Capacity Defendants "knew that the Jail's medical staff was not equipped to provide constitutional medical care," (Doc. 43 at 17), but his complaint identifies only one incident — which occurred four years prior — in which an inmate at the Rowan County Detention Center was harmed because of inadequate medical care, (Doc. 2 ¶ 25). And Plaintiff's pleadings regarding Wellpath's reputation allege at most that Hannold was aware what "Wellpath had been sued numerous times." (Id. ¶ 56.) These allegations do not, however, plausibly allege that Sheriff Auten or Hannold had "specific knowledge" about Plaintiff's medical care during the events in question. Randall, 302 F.3d at 203 n.24.

For the reasons explained above, supra Part IV.A.4, the same is true for Officer Ewart. Officer Ewart forwarded each of

complaints to medical providers. (Doc. 2 ¶¶ 74, 76, 77, 81.) And by Plaintiff's own allegations, his reports to Ewart indicate that he was receiving some medical treatment for his complaints. (Id. ¶¶ 73-81.) Accordingly, Individual Capacity Defendants' motion to dismiss the failure to intervene claim in Count III will be granted.

### 3. Count IV: Failure to Train or Supervise under § 1983

Individual Capacity Defendants next move to dismiss the failure to train and supervise claim against Sheriff Auten in Count IV. (Doc. 30 at 17–19.)

Failure to train is a theory of municipal liability that does not provide a basis for individual liability. See City of Canton, Ohio v. Harris, 489 U.S. 378, 388–92 (1989).

An officer may, however, be individually liable under 42 U.S.C. § 1983 for failure to supervise if a plaintiff establishes:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted). "To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." Id. And "[e]stablishing a pervasive and unreasonable risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions" and "poses an unreasonable risk of harm of constitutional injury." Id. (internal quotation marks omitted). A plaintiff "cannot," however, "satisfy his burden of proof by pointing to a single incident or isolated incidents." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984).

Here, Plaintiff's complaint points to four prior inmate deaths at the Rowan County Detention center that he alleges demonstrate "a history of deliberate indifference" and "pattern of misconduct." (Doc. 2 ¶¶ 24-29.) But of the four deaths, only one is alleged to have been related to medical care at the Detention Center. (See id. ¶¶ 25-28.) This "single incident" — which Plaintiff does not allege occurred during Sheriff Auten's tenure overseeing the Detention Center — is insufficient to establish that Sheriff Auten was deliberately indifferent in the

face of a "pervasive and unreasonable risk of harm" from inadequate medical care. Slakan, 737 F.2d at 373.

Plaintiff also alleges that prior to entering its contract to provide medical care at the Rowan County Detention Center, Wellpath had "a well-documented history of cutting costs at the expense of prisoners' health, safety, and well-being," "a lengthy history of misconduct in North Carolina," and "a well-publicized history of ignoring complaints of headache from prisoners with treatable meningitis." (Doc. 2 ¶¶ 33, 40, 47.) He argues that these facts provide a basis for supervisory liability. (Doc. 43 at 15–16.) The fact that these reports existed publicly may be relevant to establishing Plaintiff's Monell claims regarding Wellpath's alleged policy or custom of inadequate medical care. See Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 403–04 (4th Cir. 2014). But these reports are insufficient to establish that Sheriff Auten, acting as a supervisor in his individual capacity, "had actual or constructive knowledge" that his subordinates were engaged in conduct that posed "a pervasive and unreasonable risk of constitutional injury."[4] Shaw, 13 F.3d at 799. Accordingly, this

[4] Although Plaintiff alleges that Hannold was aware of the prior lawsuits against Wellpath, he makes no such allegations regarding Sheriff Auten. (See Doc. 2 ¶ 56.)

court will grant Enforcement Defendants' motion to dismiss the failure to supervise claims against Sheriff Auten in Count IV.

#### 4. **Count V: Negligence or Gross Negligence under State Law**

Individual Capacity Defendants next seek to dismiss Plaintiff's state law negligence claim in Count V.[5] Defendants argue that Plaintiff "has not pled any factual matter showing that Sheriff Auten, Hannold, or Officer Ewart were negligent in any way," and that they are "entitled to public officer's immunity for claims of negligence." (Doc. 30 at 22.) Plaintiff responds that his allegations are sufficient at this stage to establish a plausible claim, and that the Individual Capacity Defendants are not entitled to immunity because they "acted maliciously, corruptly, and outside the scope of their official duties." (Doc. 43 at 22–23.)

"[A] claim for gross negligence requires that plaintiff plead facts on each of the elements of negligence, including duty, causation, proximate cause, and damages." Land v. Whitley, 292 N.C. App. 244, 255, 898 S.E.2d 17, 26, vacated and remanded on other grounds by Land v. Whitley, 388 N.C. 296, 920 S.E.2d 823 (2025) (citation omitted). Negligence becomes "gross

[5] This court has supplemental jurisdiction over the state-law claims, which arise from the same conduct, under 28 U.S.C. § 1367(a).

negligence" when it involves "wanton conduct done with conscious or reckless disregard for the rights and safety of others." Id. at 255, 898 S.E.2d at 26 (citation omitted). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." Cullen v. Logan Devs., Inc., 386 N.C. 373, 382, 904 S.E.2d 730, 737 (2024) (citation omitted).

However, public official immunity

> precludes suits against public officials in their individual capacities as follows: As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability.

Wilcox v. City of Asheville, 222 N.C. App. 285, 288, 730 S.E.2d 226, 230 (2012) (cleaned up) (citations omitted). "[T]he North Carolina Supreme Court has never allowed a showing of gross negligence to suffice to pierce an officer's immunity, absent a statute specifically abolishing the common law immunity." Shaw v. Stroud, 13 F.3d 791, 803 (4th Cir. 1994) (citing Wiggins v. City of Monroe, 73 N.C. App. 44, 326 S.E.2d 39 (1985), cert. denied, 320 N.C. 178, 358 S.E.2d 72 (1987)).

"Thus, a public official is immune from suit unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." Wilcox, 730

S.E.2d at 288; accord Bartley v. City of High Point, 381 N.C. 287, 294, 873 S.E.2d 525, 533 (2022). "Sheriffs, sheriff's deputies, and jailers have all been recognized as public officials . . . ." Butterfield v. Gray, 279 N.C. App. 549 554, 866 S.E.2d 296, 301 (2021). "[A] malicious act is one which is (1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." Bartley, 381 N.C. at 296, 873 S.E.2d at 534 (internal quotation marks and citation omitted).

Regardless of the sufficiency of Plaintiff's pleadings as to the first two elements of malice, Plaintiff has not alleged that Sheriff Auten, Hannold, or Officer Ewart acted with the "inten[t] to be injurious" to Plaintiff. Id. And thus Plaintiff has not supported his conclusory allegations that Individual Capacity Defendants engaged in malicious conduct. See Twombly, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." (cleaned up)); Meyer v. Walls, 347 N.C. 97, 114, 489 S.E.2d 880, 890 (1997) ("[W]e note that a conclusory allegation that a public official acted willfully or wantonly should not be sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss. The facts alleged in the complaint must support such a conclusion.").

Granted, in the context of public official immunity, the Supreme Court of North Carolina instructs:

> We have held that "the intention to inflict injury may be constructive" intent where an individual's conduct "is so reckless or so manifestly indifferent to the consequences, where the safety of life or limb is involved, as to justify a finding of willfulness and wantonness equivalent in spirit to an actual intent."

Bartley, 381 N.C. at 296, 873 S.E.2d at 534 (emphasis added) (internal citations omitted). But this court has concluded that Plaintiff did not adequately allege that Sheriff Auten, Hannold, or Officer Ewart acted with deliberate indifference to Plaintiff's medical complaints. Nor does Plaintiff adequately allege that Individual Capacity Defendants were more than negligent in their decision to enter a contract with Wellpath. See Thomas v. McFadden, 810 F. Supp. 3d 732 (W.D.N.C. 2025) (granting motion to dismiss state law claim on basis of public official immunity where a plaintiff "describe[d] in some detail Wellpath's alleged failures in other jails" but "fail[ed] to allege facts that establish that [the sheriff] was so reckless with respect to his jail that he acted maliciously and should lose his immunity"); accord Thomas-Boyd v. Rogers, No. 21-CV-22, 2021 WL 2256274, at *4 (M.D.N.C. June 3, 2021). For these reasons, Individual Capacity Defendants' motion to dismiss the

negligence or gross negligence claim against them in Count V will be granted.

### 5. **Count VI: Injury to a Prisoner under N.C. Gen. Stat. § 162-55**

Individual Capacity Defendants next seek to dismiss the injury to a prisoner claim against Hannold and Sheriff Auten in their individual capacities in Count VI. Defendants argue that Plaintiff "has not alleged any specific facts showing that any defendant intended to harm [Plaintiff] or that any defendant acted criminally with regard to [Plaintiff]." (Doc. 30 at 23.) Plaintiff responds that at this stage, he must only allege that "Defendants' negligent behavior was done 'reckless[ly] or careless[ly], resulting in injury.'" (Doc. 43 at 24) (quoting Ramsey v. Schauble, 141 F. Supp. 2d 584, 592 (W.D.N.C. 2001).)

The North Carolina statute provides: "[i]f the keeper of a jail . . . cause[s] . . . any wrong or injury to the prisoners committed to his custody, contrary to law," the prisoner may recover treble damages and the keeper of the jail will be guilty of a Class 1 misdemeanor. N.C. Gen. Stat. § 162-55. This statute "provides damages to prison detainees and inmates . . . for conduct by prison officials 'intended by the jailers' to cause harm to them or where the jailor was criminally negligent." Layman v. Alexander, 343 F. Supp. 2d 483, 494 (W.D.N.C. 2004).

Under North Carolina law, criminal negligence is "such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences, or a heedless indifference to the safety and rights of others." Letchworth, 874 F. Supp. at 109 (citing State v. Williams, 231 N.C. 214, 56 S.E.2d 574 (1949).

Here, Plaintiff has not alleged facts sufficient to plausibly state a claim that Individual Capacity Defendants intentionally deprived Plaintiff of medical care or were criminally negligent as to his care. In the absence of supporting factual allegations regarding Sheriff Auten and Hannold's role in Plaintiff's medical care beyond their actual or constructive knowledge of Wellpath's negligence in other jails, Plaintiff's allegations are insufficient to state a claim. Individual Capacity Defendants' motion to dismiss the injury to a prisoner claim against them in Count VI will therefore be granted.

#### 6. Count VII: Action on Surety Bond under N.C. Gen. Stat. § 58-76-5

Finally, Individual Capacity Defendants seek to dismiss Plaintiff's action on surety bond claim against Sheriff Auten, Hannold, and Pennsylvania National in Count VII. Defendants argue that "in order to prevail on a statutory bond claim under

N.C. Gen. Stat. § 58-76-5, a plaintiff must be able to prove every element of at least one common law tort claim." (Doc. 30 at 24.) Plaintiff responds that because "Defendants do not dispute that if Plaintiff has sufficiently pled [his] state law tort claims, his statutory claim on the sheriff's bond should proceed" and he "has pled valid North Carolina state law claims that Defendants acted negligently . . . the Court should deny Defendant's motion to dismiss." (Doc. 43 at 24.)

North Carolina law permits suits against "a sheriff and the surety on his official bond for acts of negligence in the performance of official duties." Myers v. Bryant, 188 N.C. App. 585, 655 S.E.2d 882, 885 (2008) (citing N.C. Gen. Stat. § 58-76-5). North Carolina law requires that all sheriffs purchase a bond not exceeding $25,000. N.C. Gen. Stat. § 162-8. And under North Carolina law, a sheriff waives State sovereign immunity by purchasing that bond. N.C. Gen. Stat. § 58-76-5. But North Carolina courts have held that purchase of a bond by a sheriff waives State sovereign immunity "only to the extent of the amount of the bond." White v. Cochran, 748 S.E.2d 334, 339 (N.C. Ct. App.2013). Federal courts interpreting North Carolina law have reached the same conclusion. E.g., Oliver v. Harper, No. 09-CT-3027-H, 2011 WL 1104134, at *10 (E.D.N.C. Mar. 22, 2011)

("[T]he defendants' purchase of a $25,000.00 bond does waive immunity for damages but only up to the amount of the bond.").

The parties appear to agree that Plaintiff's claim for Action on Surety Bond in Count VII is dependent on the validity of his state law claims against Individual Capacity Defendants. Having determined that each of Plaintiff's state law claims should be dismissed against the Individual Capacity Defendants in their individual capacities, as discussed above, this court will grant Individual Capacity Defendants' motion to dismiss this surety claim as well. See McDougald v. Kersey, No. 20-CV-666, 2022 WL 17578248, at *12 (M.D.N.C. Aug. 16, 2022), report and recommendation adopted, No. 20-CV-666, 2022 WL 17091685 (M.D.N.C. Nov. 21, 2022).

### B. Rowan County Defendants' Motion to Dismiss

Rowan County Defendants have moved to dismiss six counts in the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

#### 1. Monell Claims under § 1983

The first three counts that the Rowan County Defendants seek to dismiss arise under 42 U.S.C. § 1983. "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy

statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690(1978).

A municipality may not, however, be found liable under § 1983 "based on a theory of respondeat superior or simply for employing a tortfeasor." Hill v. Robeson Cnty., N.C., 733 F.Supp.2d 676, 683 (E.D.N.C. 2010); see also Riddick v. Sch. Bd. of Portsmouth, 238 F.3d 518, 522 (4th Cir. 2000). Rather, a plaintiff must plead that "an official policy or custom" of the municipality caused a deprivation of a constitutional right in one of four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks and alterations omitted).

In addition to Rowan County, Plaintiff has sued Hannold in both his official capacity and Sheriff Allen only in his official capacity. (Doc. 2 at 5.) And "a suit against a sheriff in his official capacity constitutes a suit against a local governmental entity, i.e., a sheriff's office." Parker v.

Burris, No. 13CV488, 2015 WL 1474909, at *6 (M.D.N.C. Mar. 31, 2015), report and recommendation adopted, No. 13CV488, 2015 WL 2169148 (M.D.N.C. May 8, 2015); see also Gantt v. Whitaker, 203 F. Supp. 2d 503, 508 (M.D.N.C. 2002). In order to state a claim against Hannold and Sheriff Allen in their official capacities, Plaintiff "must allege that the alleged constitutional violations resulted from an official policy or custom of the Sheriff's office." Evans v. Guilford Cnty. Det. Ctr., No. 13CV499, 2014 WL 4641150, at *3 (M.D.N.C. Sept. 16, 2014).

#### i. Count II: Failure to Provide Adequate Medical Care

The Rowan County Defendants first seek to dismiss Plaintiff's failure to provide adequate medical care claim in Count II. Rowan County Defendants argue that Plaintiff fails to allege that "anyone in the county government ever promulgated or even articulated a policy of providing unconstitutional medical treatment to inmates." (Doc. 32 at 14 (internal quotation marks and alterations omitted).) And Rowan County Defendants further argue that they did not delegate final policymaking authority regarding medical care at the Detention Center to Wellpath. (See id. at 17–22.) Plaintiff responds that Rowan County Defendants "delegated authority and oversight to Wellpath over medical care

at the jail" and thus Wellpath's policies represent the policies of Rowan County Defendants. (See Doc. 44 at 14-15.)

"The question of who possesses final policymaking authority is one of state law." Riddick, 238 F.3d at 523 (citing Pembaur, 475 U.S. at 483). In answering this question, courts "look to the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law." Id. (internal quotation marks omitted). "And although it is true that a municipality may delegate its final policymaking authority to other officials or governing bodies," courts "must never 'assum[e] that municipal policymaking authority lies somewhere other than where the applicable law purports to put it.'" Hunter v. Town of Mocksville, 897 F.3d 538 (4th Cir. 2018) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988) (plurality opinion)).

Here, North Carolina law provides that "each [u]nit that operates a local confinement facility shall develop a plan for providing medical care for prisoners in the facility." Vaught v. Ingram, No. 10-CT-3009, 2011 WL 761482, *3 (E.D.N.C. Feb. 24, 2011) (citing N.C. Gen, Stat. § 153A-225). "Under N.C. Gen. Stat. § 153A-217(7), 'unit' . . . means a county or city. Accordingly, the language of § 153A-225 appears to impose a duty upon a county to develop a plan for providing medical care,"

which is applicable to county jails. Id. (citing State v. Wilson, 183 N.C. App. 100, 103, 643 S.E.2d 620, 622 (2007)). Therefore, "counties in North Carolina may be held liable under § 1983 for inadequate medical care plans." King v. Blackwood, No. 21CV383, 2023 WL 4163141, at *10 (M.D.N.C. June 23, 2023), report and recommendation adopted, 2023 WL 4902517 (M.D.N.C. Aug. 1, 2023).

The terms of Wellpath's contract with Rowan County support Plaintiff's allegations that Rowan County delegated final policymaking authority to Wellpath.[6] The contract states that "Wellpath shall administer health care services and related administrative services at the jail;" "Wellpath shall arrange and bear the cost of oral screening;" "Wellpath shall arrange and bear the cost of on-site mental health services;" and vests

---

[6] "It is well established that a court may 'consider documents . . . attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" Six v. Generations Fed. Credit Union, 891 F.3d 508, 512–13 (4th Cir. 2018) (quoting Sec'y of State for Defense v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007). Further, "[a]t the motion to dismiss stage, documents attached to a motion to dismiss need not be accompanied by a formal declaration authenticating them." Id. at 512–13 (internal quotation marks omitted). Plaintiff's complaint repeatedly quotes the contract between Wellpath and Rowan County, (e.g., Doc. 2 ¶ 51–54), and Plaintiff does not dispute the authenticity of the contract attached to Rowan County Defendants' motion to dismiss, (see Doc. 44 at 12–18).

"Wellpath's Chief physician" with "certain decision-making duties." (Doc. 32-2 at 4–5.)

These contract provisions are substantially similar to contract provisions at issue in Swink v. Southern Health Partners, Inc., which the Fourth Circuit determined were sufficient to hold counties responsible for their medical contractor's decisions. 160 F.4th 438, 452 (4th Cir. 2025) (quoting contract provisions stating that medical contractor would "provide for the delivery of all medical, dental and mental health services to inmates"). As such, Rowan County "may be held responsible for [Wellpath]'s decisions," which, as discussed infra, Plaintiff plausibly alleges were deliberately indifferent to his medical needs. Id.; see also Hunter v. Town of Mocksville, N.C., 897 F.3d 538, 554 (4th Cir. 2018) ("[A] 'governmental unit may create an official policy by making a single decision regarding a course of action in response to particular circumstances' so long as that governmental unit possessed 'final authority to create official policy.'") (quoting Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999)). Accordingly, this court will deny the motion to dismiss the failure to provide adequate medical care claim in Count II as to Rowan County.

Additionally, by statute, "the sheriff, not the county encompassing his jurisdiction, has final policymaking authority over hiring, supervising, and discharging personnel in the sheriff's office." Parker, 583 F.Supp.2d at 739; see N.C. Gen. Stat. § 153A-103(1); Clark v. Burke Cnty., 117 N.C. App. 85, 89, 450 S.E.2d 747, 749 (1994). North Carolina law also vests the sheriff with the "statutory responsibility for the care and custody of the inmates at the county jail." Vaught, 2011 WL 761482, at *4 (E.D.N.C. Feb. 24, 2011); see N.C. Gen. Stat. § 162-22; Landry v. North Carolina, No. 10-cv-585, 2011 WL 3682788, at *2 (W.D.N.C. Aug. 23, 2011). Thus, under North Carolina law, any allegations relating to personnel, training, or other law enforcement policies at the county jail fall within the sheriff's policymaking authority and are not attributable to the county. See, e.g., Parker, 583 F. Supp. 2d at 739-40; Little, 114 F.Supp.2d at 446; Jones v. Harrison, No. 12-CV-90, 2013 WL 1452861, at *2 (E.D.N.C. Apr. 9, 2013). Because the contract documents and statements of Hannold indicate that the Rowan County Sheriff's Office was also involved in contracting with Wellpath, this court will also deny the motion to dismiss the failure to provide adequate medical care claim in Count II as to Sheriff Allen and Hannold. (See Doc. 32-2 at 2; Doc. 2 ¶ 56.

#### ii. **Count III: Failure to Intervene**

Rowan County Defendants purport to seek to dismiss all claims against them, including the failure to intervene claim in Count III. (See Doc. 32 at 3.) However, Plaintiff argues that Rowan County Defendants identify no basis for dismissal of this claim. (Doc. 44 at 12.) Rowan County Defendants address bystander liability in a footnote for the first time in reply. (Doc. 50 at 13 n.2.)

"A party waives an argument by failing to present it in its opening brief or by failing to 'develop [its] argument — even if [its] brief takes a passing shot at the issue.'" Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017) (quoting Brown v. Nucor Corp., 785 F.3d 895, 923 (4th Cir. 2015)) (cleaned up). Accordingly, to the extent that Rowan County Defendants seek to dismiss the claim against them in Count III, their motion will be denied.[7]

#### iii. **Count IV: Failure to Train**

Finally, Rowan County Defendants seek to dismiss the failure to train claim against them in Count IV. (See Doc. 32 at

[7] Although not raised in the opening brief here, it appears to this court that failure to intervene is an individual capacity claim. That issue was not raised in Rowan County Defendants' opening brief. However, the parties should address this issue in any further briefing.

14–15. Rowan County Defendants argue that Plaintiff "has failed to ple[a]d any factual matter showing that the moving defendants were deliberately indifferent regarding training" because he did not "plead facts showing specific deficiencies in training." (Id. at 15.) Plaintiff responds that he has "pled facts showing Defendants had actual or constructive knowledge of a pattern of constitutional violations highly similar to those here" and "alleged a specific training deficiency: that Defendants failed to train employees how to recognize and appropriately respond to medical emergencies." (Doc. 44 at 20–22, n.4.)

A "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011). A county may be liable for inadequate training of its employees "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). This is a demanding standard that requires the plaintiff to plausibly allege that municipal "policymakers [we]re on actual or constructive notice that a particular omission in their training program cause[d] c[ounty] employees to violate citizens' constitutional rights" and "disregarded a known or obvious consequence" of their inaction. Connick, 563 U.S. at 61.

A pattern of violations is typically required to show a failure to train. Id. at 62. But a plaintiff may alternatively show that "the unconstitutional consequences of failing to train [were] could be so patently obvious that a c[ounty] could be liable under § 1983 without proof of a pre-existing pattern of violations." Id. at 64.

But Plaintiff identifies only one prior inmate death due to inadequate medical care at the Rowan County Detention Center, and it predated Rowan County's contract with Wellpath by several years. Compare, Doc. 2 ¶ 25, with Harris, 489 U.S. at 399 (O'Connor, J. concurring in part and dissenting in part) (collecting cases). Furthermore, "jail officials are ordinarily entitled to defer to the judgment of medical professionals." Rice ex rel. Rice v. Corr. Med. Servs., 675 F.3d 650, 676 (7th Cir. 2012), abrogated on other grounds by Kingsley, 567 U.S. 389; see also Iko, 535 F.3d at 242. Accordingly, given the lack of alleged prior incidents at the Rowan County Detention Center and the presumption that medical staff have more expertise in medicine than jail guards, Plaintiff has failed to plausibly allege that Rowan County Defendants' failure to train officers to "respond to medical emergencies," (Doc. 2 ¶ 137), made Plaintiff's injury "bound to happen, sooner or later," Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999), abrogated on other

grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010) (per curiam) (rejecting a severity of injury analysis in excessive force claims). Rowan County Defendants' motion to dismiss the failure to train claims in Count IV will therefore be granted.

### 2. **State Law Claims**

Rowan County Defendants also seek to dismiss three claims arising under state law.

#### i. **Count V: State Law Negligence**

Rowan County Defendants first seek to dismiss Plaintiff's negligence claim in Count V, arguing that he "has not pled any factual matter showing that the County, the Office of the Sheriff, or their officers were negligent in any way." (Doc. 32 at 23.) Plaintiff responds that his complaint adequately alleges facts to support each element of negligence. (Doc. 44 at 23.) This court agrees.

As explained above, a claim for negligence under North Carolina requires a showing of duty, breach, causation, and damages. See Land, 292 N.C. App. At 255, 898 S.E.2d at 26. Under both state and federal law, jail officials owe a duty to provide adequate medical care to the inmates in their custody. See Vaught, 2011 WL 761482, at *3-*4. Plaintiff's factual allegations regarding Wellpath's history of deficient medical care, Rowan County's requirement that potential contractors

disclose prior complaints against them in the bidding process, and Hannold's admitted awareness of past lawsuits against Wellpath are sufficient at this stage to plausibly allege that Rowan County Defendants knew that there was a risk that Wellpath would not provide adequate medical care to inmates at the Detention Center. (See Doc. 2 ¶¶ 30-47, 48, 56.) Plaintiff has also plausibly alleged that his injuries were caused by delays in receiving necessary medical care, and Rowan County Defendants do not dispute that Plaintiff suffered damages because of his injuries. (Doc. 2 ¶¶ 100-09; see also Doc. 32 at 23.) As such, Rowan County Defendants' motion to dismiss Plaintiff's negligence claim in Count V will be denied.

**ii. Count VI: Injury to Prisoner**

Rowan County Defendants next seek to dismiss the injury to a prisoner claim against Hannold in Count VI. Rowan County Defendants argue that Plaintiff "has not alleged any specific facts showing that any defendant intended to harm Plaintiff or that any defendant acted criminally with regard to Plaintiff." (Doc. 32 at 23.) Plaintiff responds that all he must allege to survive a motion to dismiss "is that Hannold's negligent behavior was done recklessly or carelessly, resulting in injury." (Doc. 44 at 23 (cleaned up).)

As stated above, because Section 162-55 is, at least in part, a criminal statute, a plaintiff "must prove beyond a reasonable doubt that the jailer intended to injure the plaintiff or that the jailer was guilty of criminal negligence." Ramsey, 141 F. Supp. at 591; see also Layman, 343 F. Supp. 2d at 494. Under North Carolina law, "[c]riminal negligence is such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences, or a heedless indifference to the safety and rights of others." Layman, 294 F.Supp.2d at 796 (quoting Letchworth, 874 F. Supp. at 109).

The extent of Plaintiff's factual allegations against Hannold is that he had actual or constructive knowledge of Wellpath's potential negligence in other jails. Plaintiff does not allege that any Detention Center officers withheld medical treatment from Plaintiff. In fact, Plaintiff's complaint states that officers repeatedly forwarded Plaintiff's grievances to medical providers. (See Doc. 2 ¶¶ 74, 76, 77, 81.) These allegations are insufficient to support a plausible claim under Section 162-55, and Rowan County Defendants' motion to dismiss the injury to prisoner claim in Count VI will therefore be granted. See Thomas v. McFadden, 810 F. Supp. 3d 732, 751, n.10 (W.D.N.C. 2025).

### iii. **Count VII: Action on Surety Bond**

Rowan County Defendants finally seek to dismiss the Action on Surety Bond in Count VII. Rowan County Defendants argue that because Plaintiff has not "prove[n] every element of at least one common law tort claim," he cannot prevail on his statutory bond claim. (Doc. 32 at 24.) Plaintiff responds that he "has pled valid North Carolina state law claims that the Sheriff's Office and Rowan County acted negligently" and that there is accordingly "no basis to dismiss Plaintiff's statutory claim on the sheriff's bond." (Doc. 44 at 24.)

The relevant statute provides:

> Every person injured by the neglect, misconduct, or misbehavior in office of any . . . sheriff . . . or other officer, may institute a suit or suits against said officer or any of them and their sureties upon their respective bonds for the due performance of their duties in office in the name of the State, without any assignment thereof; . . . and every such officer and the sureties on the officer's official bond shall be liable to the person injured for all acts done by said officer by virtue or under color of that officer's office.

N.C. Gen. Stat. § 58-76-5 (emphasis added). Plaintiff's complaint alleges that Sheriff Auten was the Rowan County Sheriff during his incarceration at the Rowan County Detention Center in 2021, whereas Sheriff Allen is the current sheriff. (Doc. 2 ¶¶ 13-14.) Plaintiff further alleges that while Sheriff

Auten was in office, Pennsylvania National was his surety bond holder. (Id. ¶ 17.)

The statute contemplates that an individual injured by the Sheriff "may institute a suit or suits against said officer or any of them and their sureties." N.C. Gen. Stat. § 58-76-5. Thus, the officer and the surety must align. See Myers v. Bryant, 188 N.C. App. 585, 588, 655 S.E.2d 882, 885 (2008) ("[U]nder section 58-76-5, a plaintiff may sue a sheriff and the surety on his official bond for acts of negligence in the performance of official duties."). Because Plaintiff does not name Sheriff Allen's surety company as a defendant, Rowan County Defendants' motion to dismiss the action on surety bond claim in Count VII will be granted.

### C. Provider Defendants' Motion to Dismiss

Provider Defendants have moved to dismiss four counts in the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Some of the claims Provider Defendants moved to dismiss name fewer than all Provider Defendants, and some name additional defendants. (See Doc. 2 at 41-48.)

#### 1. Count I: Failure to Provide Adequate Medical Care

First, Provider Defendants Doctor Corrigan and Nurse Rowland seek to dismiss the failure to provide adequate medical

care claim against them in Count I. Provider Defendants argue that Plaintiff "fails to distinguish each individual's alleged acts or omissions," and that Plaintiff's complaint demonstrates that he received adequate treatment. (Doc. 34 at 10–11.) Plaintiff responds that his "allegations show that each individual Defendant had actual subjective knowledge of his serious medical condition and the excessive risk posed by their inaction." (Doc. 45 at 11 (internal quotation marks omitted).)

As explained above, supra Section IV.A.i, to state a claim for deliberate indifference to a serious medical need, a pretrial detainee must plead that:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

Short, 87 F.4th at 611. This court has already found, and Provider defendants appear not to dispute, that Plaintiff suffered from a serious medical condition that posed a substantial risk of harm. (See Doc. 2 ¶¶ 100–08; Doc. 34 at 8–12.)

As to Doctor Corrigan, Plaintiff's complaint alleges three instances of Doctor Corrigan's involvement in Plaintiff's

treatment. First, Plaintiff alleges that Doctor Corrigan received a nursing progress note from Nurse Rowland on August 1, 2021, documenting Plaintiff's complaint of a persistent headache that was "the worst he has ever had," vomiting, and elevated blood pressure. (Doc. 2 ¶ 73.) Second, Plaintiff alleges that Doctor Corrigan reviewed Plaintiff's chart on August 31, 2021, and adjusted Plaintiff's medications. (Id. ¶ 84.) And finally, Plaintiff alleges that Doctor Corrigan treated him in his cell on September 27, 2021, at which point Doctor Corrigan ordered that Plaintiff be taken to the emergency room. (Id. ¶ 99.)

Provider Defendants argue that this court should not credit Plaintiff's first and second allegations because they are premised on Plaintiff's "information and belief" and are thus insufficient. (Doc. 34 at 11.) It is generally true that conclusory allegations based solely "upon information and belief" are "insufficient to defeat a motion to dismiss." Harman v. Unisys Corp., 356 F. App'x 638, 640–41 (4th Cir. 2009) (unpublished) (noting that "conclusory allegations" which merely "assume [a fact entitling plaintiff to relief] . . . 'upon information and belief' " are "insufficient to defeat a motion to dismiss" (citing Twombly, 550 U.S. at 555 (finding a complaint insufficient even though it stated, "Plaintiffs allege upon information and belief that [defendants] have entered into

a contract, combination or conspiracy to prevent competitive entry . . . "))). But "the Twombly plausibility standard . . . does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (citation omitted); Innova Hospital San Antonio, Limited Partnership v. Blue Cross & Blue Shield of Georgia, Inc., 892 F.3d 719, 730 (5th Cir. 2018) (same); see also Menard v. CSX Transportation, Inc., 698 F.3d 40, 45-46 (1st Cir. 2012) (vacating district court's dismissal for failure to state a claim and remanding to provide plaintiff an opportunity to disclose underlying facts of seemingly speculative allegation based on "information and belief").

Provider Defendants argue that these allegations would undermine Plaintiff's deliberate indifference claim even if taken as true. (Doc. 51 at 3.) However, this court concludes that, viewed in the light most favorable to Plaintiff, the allegations described above, in combination with the other facts pled in the complaint, demonstrate that Doctor Corrigan received Plaintiff's serious medical complaints on multiple occasions and failed to respond appropriately until almost two months after

the first reports of Plaintiff's symptoms. While discovery may reveal that Plaintiff is unable to prove that Doctor Corrigan conduct rise to the level of deliberate indifference, Plaintiff's allegations are sufficient to plausibly allege the elements at this stage.

The same is true for Nurse Corrigan. Plaintiff alleges that Nurse Rowland first saw him on August 1, 2021, and documented Plaintiff's report of a multi-day headache that was "the worst he has ever had," vomiting, and elevated blood pressure. (Doc. 2 ¶ 73.) At that time, Nurse Rowland's only documented response was to "educate[ ]" Plaintiff on the "importance of staying hydrated" and instruct him to "return to clinic if symptoms persist or get worse." (Id.) Plaintiff returned to Nurse Rowland's care on September 5, 2021, and continued to complain of a "severe headache" not relieved by Tylenol. (Id. ¶ 87.) Plaintiff additionally reported that his headaches started when "was assaulted around a month" prior and "hit the back of his head," and he told Nurse Rowland that he experienced "dizziness" and "blurred vision," was unable to sleep, and had lost 30 pounds in one month. (Doc. ¶ 87.) According to Plaintiff's allegations, Nurse Rowland noted only that "Provider [was] made aware." (Id.) As with Doctor Corrigan, these factual allegations are sufficient to plausibly allege that Nurse Rowland knew of

Plaintiff's serious medical condition and on multiple occasions failed to respond appropriately to address the risk posed by that condition, resulting in serious harm. As such, Provider Defendants' motion to dismiss the claim for failure to provide adequate medical care against Doctor Corrigan and Nurse Rowland in Count I will be denied.

### 2. Count II: Failure to Provide Adequate Medical Care

Next, Provider Defendants seek to dismiss the failure to provide adequate medical care claim alleged against Wellpath in Count II. Plaintiff brings a claim against Wellpath under § 1983 and the Fourteenth Amendment. "[A] private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights." Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999). Wellpath argues that the relevant policies articulated in its contract with Rowan County are "that inmates are to be given medical care that conforms to NCCHC guidelines and North Carolina standards." (Doc. 34 at 14.) Provider Defendants further argue that Plaintiff's "conclusory allegations regarding Wellpath's alleged notoriety are not entitled to the presumption of truth and must be disregarded for purposes of Wellpath's motion to dismiss." (Id. at 16.) Plaintiff responds that the news reports and public records that he cites in his complaint

are the types of information "which courts routinely rely on to find allegations plausible" and "corroborate the existence of a policy or custom of failing to recognize serious medical concerns and ignoring emergencies, with catastrophic consequences." (Doc. 45 at 16, 22.)

Even without considering Plaintiff's allegations regarding Wellpath's history of providing inadequate medical care, Plaintiff's complaint states sufficient facts of deliberate indifference to avoid 12(b)(6) dismissal. According to Plaintiff, he first made Wellpath staff aware of his complaints on or about July 31, 2021. (See Doc. 2 ¶ 70–71.) Over the course of the following two months, Plaintiff submitted several complaints to Wellpath staff documenting his persistent and severe neurological symptoms. As described above, Plaintiff alleges that he told Nurse Rowland on August 1, that he vomited and had "the worst [headache] he has ever had." (Id. ¶ 73.) When Plaintiff's complaints continued 11 days later with a report that he was having trouble breathing, Wellpath staff allegedly told Plaintiff to "stop putting in so many sick calls." (Id. ¶ 79.) The complaint alleges that Plaintiff submitted additional medical grievances throughout August, (id. ¶¶ 80–84), but Wellpath staff allegedly only adjusted his medications, (e.g., id. ¶ 84). Plaintiff reported worsening symptoms to Nurse

Rowland on September 5, and again on September 10, when Plaintiff alleges that another Wellpath provider concluded that there was no evidence of various series medical conditions and thus "imaging was not warranted." (Id. ¶¶ 87, 89.)

This pattern of complaints and lack of treatment continued, resulting in Plaintiff's placement on suicide watch before ultimately being sent to the emergency room on September 27. (Id. ¶ 90–100.) These allegations, taken as true at this stage of the proceedings, state a plausible custom of deliberate indifference to Plaintiff's serious medical needs. See Simmons v. Corizon Health, Inc., 122 F. Supp. 3d 255, 263–64 (M.D.N.C.), on reconsideration in part, 136 F. Supp. 3d 719 (M.D.N.C. 2015). Provider Defendants' motion to dismiss the failure to provide adequate medical care claim against Wellpath in Count II will therefore be denied.

### 3. **Count IV: Failure to Train**

Provider Defendants next seek to dismiss the failure to train claim alleged against Wellpath in Count IV. Provider Defendants argue that Plaintiff has "failed to plead any factual matter" showing "specific deficiencies in training." (Doc. 34 at 15.) And Provider Defendants further argue that this court must disregard Plaintiff's claims "regarding Wellpath's alleged notoriety" because they are hearsay and demonstrate that the

mortality rate in Wellpath-affiliated jails is less than the national average. (Id. at 15–16.) Plaintiff responds that he has alleged a specific training deficiency, "that Defendants failed to train employees on how to recognize and appropriately respond to medical emergencies." (Doc. 45 at 20 n.9.) And Plaintiff also contends that courts routinely rely on the type of allegations stated in his complaint at the motion to dismiss stage. (Id. at 22–23.)

As explained above, failure to train claims must meet a demanding standard that requires the plaintiff to plausibly allege that "policymakers [we]re on actual or constructive notice that a particular omission in their training program cause[d] . . . employees to violate citizens' constitutional rights" and "disregarded a known or obvious consequence" of their inaction. Connick, 563 U.S. at 61. A pattern of violations is typically required to show a failure to train. Id. at 62. But a plaintiff may alternatively show that "the unconstitutional consequences of failing to train [were] could be so patently obvious" that an entity "could be liable under § 1983 without proof of a pre-existing pattern of violations." Id. at 64.

Here, Plaintiff has plausibly alleged that Wellpath had notice of a pattern of violations caused by its medical providers failing to recognize and appropriately respond to

medical emergencies that are sufficient to state a claim for failure to train. Plaintiff's complaint identifies multiple previous complaints regarding Wellpath's allegedly deficient medical services in North Carolina and other states. (See Doc. 2 ¶¶ 34-47.) Including allegations that Wellpath providers failed to appropriately recognize and respond to medical emergencies involving inmates suffering from meningitis. (Id. ¶ 47.) And while it is true that news articles such as those cited in the complaint may not be admissible evidence in later stages of the proceedings, "whether [Plaintiff] can prove what he has alleged is not the issue" because "[a]t this stage of the proceedings, [the court] must take the complaint's factual allegations as true." Haley v. City of Bos., 657 F.3d 39, 52 (1st Cir. 2011); accord Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 404 (4th Cir. 2014). As discussed previously, the articles are sufficient, when considering the circumstances, to plausibly allege notice to the Rowan County Defendants and Wellpath. The veracity of those articles, and the resulting notice, will have to be addressed at summary judgment or trial.

"[P]revailing on the merits of a Monell claim is difficult, [but] simply alleging such a claim is, by definition, easier." Owens, 767 F.3d at 403. Here, Plaintiff has alleged a multi-year pattern of violations by Wellpath such that its policymakers

would be expected to have actual, or at least constructive, knowledge that an omission in their training program resulted in their employees violating inmates' rights. See Connick, 563 U.S. at 61. This court will accordingly deny Provider Defendants' motion to dismiss the failure to train claim against them in Count IV.

**4. Count III: Failure to Intervene**

Finally, Provider Defendants seek to dismiss the failure to intervene claim alleged against them in Count III. Provider Defendants argue that the "Fourth Circuit has yet to issue any decision holding a private medical provider liable for § 1983 bystander liability" and therefore the claim against them should be dismissed. (Doc. 34 at 18 (internal quotation marks omitted).) Plaintiff responds that Provider Defendants "cite no case that holds or even suggests that medical personnel acting under color of state law are not also subject to this well-established constitutional duty like any other state official." (Doc. 45 at 23.)

The Fourth Circuit has stated that "[t]he concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Randall v. Prince George's Cnty., Md., 302 F.3d 188, 203 (4th Cir. 2002). This theory

"establishes that 'one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge.'" Quinn v. Zerkle, 111 F.4th 281, 295 (4th Cir. 2024) (quoting id. at 203–04) (emphasis added).

Plaintiff has not identified any case from a court in the Fourt Circuit expanding bystander liability beyond the context of law enforcement officers, nor has this court identified any such cases. In fact, multiple courts in this Circuit have declined to expand the scope of bystander liability beyond law enforcement officers. See Hood v. Farmer, No. 22-CV-00265, 2023 WL 1971343 (S.D. W. Va. Feb. 13, 2023) (determining that "cases applying bystander liability show that the theory applies only to law enforcement officers") (internal quotation marks omitted); Murphy v. Fields, No. CV 17-2914-CMC-PJG, 2018 WL 1449171 (D.S.C. Mar. 5, 2018), report and recommendation adopted, No. 17-CV-2914-CMC, 2018 WL 1430957 (D.S.C. Mar. 21, 2018). Courts outside the Fourth Circuit have reached a similar conclusion. See, e.g., Pearson v. Shriners Hosps. for Child., Inc., 133 F.4th 433, 447 (5th Cir. 2025)("[B]ystander liability has not been extended beyond the law enforcement context.").

Plaintiff cites several cases from district courts in Pennsylvania in support of his argument that medical providers can be held liable under a theory of failure to intervene. (Doc. 45 at 23-24). However, these cases are of limited value because the Third Circuit has also determined that it has "not recognized a constitutional duty to intervene to prevent the violation of the right to medical care." Thomas v. City of Harrisburg, 88 F.4th 275, 285 n.55 (3d Cir. 2023). Accordingly, Provider Defendants' motion to dismiss the failure to intervene claim alleged in Count III will be granted.

## V. CONCLUSION

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Defendants Kevin Auten in his individual capacity, Gregory Hannold in his individual capacity, Jerry Ewart in his individual capacity, and Pennsylvania National Mutual Casualty Insurance Company's Motion to Dismiss, (Doc. 29), is **GRANTED.** Counts I, III, IV, V, VI, and VII are **DISMISSED WITH PREJUDICE** as to Defendants Kevin Auten in his individual capacity, Gregory Hannold in his individual capacity, Jerry Ewart in his individual capacity, and Pennsylvania National Mutual Casualty Insurance Company.

**IT IS FURTHER ORDERED** that Defendants Rowan County, J. Travis Allen in his official capacity, and Gregory Hannold in his official capacity's Motion to Dismiss, (Doc. 31), is **GRANTED IN PART AND DENIED IN PART.** Count IV is **DISMISSED WITH PREJUDICE** as to Rowan County, J. Travis Allen, and Gregory Hannold. Count VI is **DISMISSED WITH PREJUDICE** as to Gregory Hannold. And Count VII is **DISMISSED WITH PREJUDICE** as to J. Travis Allen and Gregory Hannold. The Motion is **DENIED** as to Rowan County, J. Travis Allen, and Gregory Hannold in Count II; as to Rowan County, J. Travis Allen and Gregory Hannold in Count III; and as Rowan County, J. Travis Allen and Gregory Hannold in Count V.

**IT IS FURTHER ORDERED** that Defendants' Kevin John Corrigan, Ashley Rowland, and Wellpath LLC's Motion to Dismiss, (Doc. 33), is **GRANTED IN PART AND DENIED IN PART.** Count III as to Kevin John Corrigan, Ashley Rowland, and Wellpath, LLC is **DISMISSED WITH PREJUDICE.** The motion is **DENIED** as to all other counts.

The following claims will proceed: Count I as to Kevin John Corrigan, Ashley Rowland, and Jacquelin Michele Wiliams; Count II as to Wellpath, LLC, Rowan County, and J. Travis Allen and Gregory Hannold in their official capacities; County III as to Rowan County and J. Travis Allen and Gregory Hannold in their official capacities; Count IV as to Wellpath, LLC; and Count V as to Wellpath, LLC, Rowan County, J. Travis Allen and Gregory

Hannold in their official capacities, Kevin John Corrigan, Ashley Rowland, and Jacqueline Michele Williams.

This the 30th day of September, 2026.

William L. Osteen, Jr.
United States District Judge